Dear Clerk of the Court:

Please find enclosed my 2241 motion. I will have my family send you the $5 filing fee as soon as I receive the case number.

If you have any questions, please contact me at:

Patrick Salvador  11264-031
P.O. Box 2000
Joint Base MDL, NJ   08640

RECEIVED

FEB - 8 2022

AT 8:30_____M
WILLIAM T. WALSH
CLERK

Thank you

Pat Sd

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
## for the

| | | |
|---|---|---|
| *Patrick Salvador*<br>Petitioner | ) ) ) ) ) ) ) ) ) ) | FEB - 8 2022<br><br>Case No.<br>*(Supplied by Clerk of Court)* |
| v. | | |
| *L. N'Diaye, Warden FCI Fort Dix*<br>Respondent<br>*(name of warden or authorized person having custody of petitioner)* | | |

### PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241
#### Personal Information

1.    (a) Your full name:  *Patrick Salvador*
       (b) Other names you have used:

2.    Place of confinement:
       (a) Name of institution:  *FCI Fort Dix*
       (b) Address:  *P.O. Box 2000*
                   *Joint Base MDL, NJ  08640*
       (c) Your identification number:  *11264-031*

3.    Are you currently being held on orders by:
       ☒ Federal authorities     ☐ State authorities     ☐ Other - explain:

4.    Are you currently:
       ☐ A pretrial detainee (waiting for trial on criminal charges)
       ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
          If you are currently serving a sentence, provide:
              (a) Name and location of court that sentenced you:
              *United States District Court, District of Colorado*
              (b) Docket number of criminal case:  *1:06-cr-00032-LTB*
              (c) Date of sentencing:  *December 8, 2006*
       ☐ Being held on an immigration charge
       ☐ Other *(explain):*

#### Decision or Action You Are Challenging

5.    What are you challenging in this petition:
       ☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory
maximum or improperly calculated under the sentencing guidelines)

☒ Disciplinary proceedings

☐ Other *(explain):*

6. Provide more information about the decision or action you are challenging:

(a) Name and location of the agency or court:   *FCI Fort Dix, New Jersey*

(b) Docket number, case number, or opinion number:   *Incident report number 3377624*

(c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed):*

*Disallowance Good Conduct Time: 41 Days*
*Monetary Fine: $500*

(d) Date of the decision or action:   *April 22, 2020*

### Your Earlier Challenges of the Decision or Action

7. **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☒ Yes          ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:   *Federal Bureau of Prisons Regional Director*

(2) Date of filing:   *May 27, 2020*

(3) Docket number, case number, or opinion number:   *Case number 1037417R1*

(4) Result:   *Denied*

(5) Date of result:   *January 19, 2021*

(6) Issues raised:   *The phone was found in a common area while I was out of the building.*
*The tape used to hide phone does not match the tape I had in my locker. I have no need*
*or means to acquire a phone. There is no phone pouch.*
*DHO did not provide due process when she found me guilty before I could even offer a defense.*
*DHO did not provide due process when she severely misinterpreted incident report by*
*erroneously finding that phone was found "inside my locker, amongst my personal possessions."*
*DHO was biased by saying she would go with what "her officer" wrote and stating inmates usually lie.*

(b) If you answered "No," explain why you did not appeal:

8. **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☒ Yes          ☐ No

SALVADOR PATRICK TORRES

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:   Federal Bureau of Prisons Central Office

(2) Date of filing:   July 15, 2020
(3) Docket number, case number, or opinion number:   Case number 1037417-A3
(4) Result:   Denied
(5) Date of result:   February 10, 2021
(6) Issues raised:   The phone was found in a common area while I was out of the building. The tape used to hide phone does not match the tape I had in my locker. I have no need or means to acquire a phone. There is no phone pouch.
DHO did not provide due process when she found me guilty before I could even offer a defense. DHO did not provide due process when she severely misinterpreted incident report by erroneously finding that phone was found "inside my locker, amongst my personal possessions." DHO was biased by saying she would go with what "her officer" wrote and stating inmates usually lie.

(b) If you answered "No," explain why you did not file a second appeal:



9.   **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes          ☒ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:

(2) Date of filing:
(3) Docket number, case number, or opinion number:
(4) Result:
(5) Date of result:
(6) Issues raised:



(b) If you answered "No," explain why you did not file a third appeal:
Exhausted administrative remedies

10.   **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes                ☒ No

If "Yes," answer the following:

(a)      Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes                ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

 If "Yes," provide:
 (1) Name of court:
 (2) Case number:
 (3) Date of filing:
 (4) Result:
 (5) Date of result:
 (6) Issues raised:

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

　　 ❏ Yes　　　　　☒ No

 If "Yes," provide:
 (1) Name of court:
 (2) Case number:
 (3) Date of filing:
 (4) Result:
 (5) Date of result:
 (6) Issues raised:

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:

11. **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

　❏ Yes　　　　　☒ No

 If "Yes," provide:

(a) Date you were taken into immigration custody:

(b) Date of the removal or reinstatement order:

(c) Did you file an appeal with the Board of Immigration Appeals?

　　 ❏ Yes　　　　　❏ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:
(1) Date of filing:
(2) Case number:
(3) Result:
(4) Date of result:
(5) Issues raised:

(d)     Did you appeal the decision to the United States Court of Appeals?
☐ Yes                    ☐ No
If "Yes," provide:
(1) Name of court:
(2) Date of filing:
(3) Case number:
(4) Result:
(5) Date of result:
(6) Issues raised:

12.    **Other appeals**
Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?
☐ Yes                    ☒ No
If "Yes," provide:
(a) Kind of petition, motion, or application:
(b) Name of the authority, agency, or court:

(c) Date of filing:
(d) Docket number, case number, or opinion number:
(e) Result:
(f) Date of result:
(g) Issues raised:

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Grounds for Your Challenge in This Petition

13. State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** The phone that was found is being attributed incorrectly to me.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

Phone was found in what is clearly a common area. See attached complaint.

(b) Did you present Ground One in all appeals that were available to you?
☒ Yes          ☐ No

**GROUND TWO:** DHO found me guilty before even hearing my statement, denying me due process.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

DHO initiated sanctions before I had a chance to defend myself. DHO also grossly misinterpreted the incident report, attributing the phone as having been found in my locker, when this was clearly not the case. See attached complaint.

(b) Did you present Ground Two in all appeals that were available to you?
☒ Yes          ☐ No

**GROUND THREE:** BOPs administrative remedy process did not follow protocols, and therefore violated due process rights and equal protection versus similarly situated subjects.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

BOP repeatedly ignored its own protocols and timelines throughout my administrative remedy process. Administrative remedy responses were backdated on multiple occasions. Central Office contacted DHO to have them rewrite the DHO report, a process in which important facts were changed in the report. See attached complaint.

(b) Did you present Ground Three in all appeals that were available to you?
☐ Yes          ☒ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** Key evidence was ignored: The tape on the wall did _not_ match the tape found in my locker, and there is no account of any phone case being entered into evidence.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

The tape on the wall did _not_ match tape in my locker. The tape on the wall was conveniently not entered into photographic evidence. The same holds true for the alleged phone pouch, which would also have been impossible to find under my locker, as my locker was level with the ground.

(b) Did you present Ground Four in all appeals that were available to you?

☒ Yes          ☐ No

14.  If there are any grounds that you did not present in all appeals that were available to you, explain why you did not: Ground three addresses the adminstrative remedy process itself, which concluded with my receipt of the final, Central Office appeal.

**Request for Relief**

15. State exactly what you want the court to do: I am requesting that the Honorable Court overturn all sanctions imposed by DHO, including 41 days of good conduct time and $500 monetary fine.

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

### Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

*January 27, 2022*

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 1/27/22

*Signature of Petitioner*

*Signature of Attorney or other authorized person, if any*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FEB - 8 2022

PATRICK SALVADOR

v.                                              Case No.

WARDEN, FCI FORT DIX


COMPLAINT


The  Petitioner,  Patrick  Salvador,  comes  before  the  Court
pursuant to Title 28 USC §2241.


The  Petitioner's  due  process  rights  have  been  violated.   The
arbitrary  decisions  made  during  disciplinary  proceedings  against
the  Petitioner  are  sufficiently  capricious  as  to  violate  his
Constitutional  protection  against  due  process  infringement.


DUE PROCESS

Prisoners  have  a  protected  due  process  liberty  interest  in
earned  good  conduct  time.  Wolff v. McDonnell, 418 US 539, 557, 94
S. Ct. 2963, 41 L. Ed. 2d 935 (1974); see Superintendent, Mass.
Corr. Inst., Walpole v. Hill, 472 US 445, 454, 105 S. Ct. 2768, 86
L. Ed. 2d 356 (1985) ("Where a prisoner has a liberty interest in
good  time  credits,  the  loss  of  such  credits  threatens  his
prospective  freedom  from  confinement  by  extending  the  length  of
imprisonment.

The Supreme Court described five elements of procedural due process required for a prison disciplinary hearing where an inmate is sanctioned with loss of good conduct time: 1) written notice of the charged misconduct at least 24 hours in advance of the hearing; 2) an impartial hearing body; 3) opportunity to present witnesses and documentary evidence; 4) assistance for illiterate inmates or in complex cases; and 5) a written statement of the evidence relied upon and the reasons for the sanction.  Wolff, 418 US at 564-70.

As set forth above, when a disciplinary hearing officer revokes an inmate's good conduct time, the inmate must receive a written statement of the disciplinary board's findings of fact in order to satisfy the basic tenets of due process.  Wolff, 418 US at 563-67.   To that end, the BOP's regulations provide that an inmate "will receive a written copy of the DHO decision following the hearing."  28 CFR §541.8(h).  The DHO "ordinarily provides the DHO report to the inmate within fifteen (15) work days."

ADMINISTRATIVE REMEDIES

The exhaustion requirement for §2241 petitions are judicially imposed.  See Moscato v. Federal Bureau of Prisons, 98 F. 3d. 757 (3rd Cir. 1996); McCallister v. Haynes, 2004 US Dist. LEXIS 30032, 2004 WL 3189469 (N.D.W.Va. 2004).

Since the exhaustion requirement for a §2241 petitioner is judicially imposed, the Court has discretion to waive that

requirement in certain circumstances.  See LaRue v. Adams, 2004 US Dist. LEXIS 31291, 2006, WL 1674487, *8 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F. 3d. 1126, 1129-31 (4th Cir.) 521 US 1131, 118 S. Ct. 2, 138 L. Ed. 2d 1036 (1997)).

Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury.

When an inmate appeals a DHO decision, he is permitted to skip the usual step of appealing to the Warden and appeal directly to the BOP Regional Director in the region where the inmate is located.  28 CFR §542.14(d).  If the Regional Director denies the appeal, the inmate may appeal that decision to the General Counsel (a "Central Office Appeal") within 30 calendar days from the date of the Regional Director's response.  28 CFR §542.15(a) and (b)(3).  "Appeal to the General Counsel is the final administrative appeal." Id. §542.15(a).

Petitioner contends he was found guilty in a prison disciplinary hearing held in violation of the basic tenets of due process described in Wolff v. McDonnell.

Petitioner contends that said hearing also violated due process outlined by the United States Supreme Court and that his Constitutional rights were violated before, during, and after the

disciplinary hearing in which the DHO was biased, and that the administrative remedy process was tainted by delay and non-compliance with BOP policy.

The Petitioner argues that under precedents set by prior cases, he should have not been found guilty given the lack of evidence against him

## ARGUMENT

### I. THE CONTRABAND CANNOT BE ATTRIBUTED TO THE PETITIONER

"Possession of contraband may be actual or constructive." United States v. Cardenas, 748 F. 2d. 1015, 1019 (1984). "Mere proximity to the contraband, presence on property where it is found, and associations with a person or persons having control of it are all insufficient to establish constructive possession." United States v. Carrasco, 257 F. 3d. 1045 (2001). "Constructive possession may be inferred when the contraband is found in a place which is immediately and exclusively accessible to the accused." Mosqueda v. Smith, US Dist. LEXIS 1108 (1999) (emphasis provided).

"In the prison disciplinary context, constructive possession provides specific evidence of guilt if relatively few inmates have access to the area." Diaz v. Wilson, US Dist. LEXIS 3339 (2020) (emphasis provided). In Mason v. Sargeant, 898 F. 2d. 679 (1989), the constructive possession of a prisoner's alleged contraband was determined by dividing the potential accountability between all

the inmates with access to the area where the contraband was found.   In Mason, this number was four prisoners.   (Each had 25% accountability.)   In this case, the Petitioner is housed in a cell of 12 inmates, which takes the percentage to 8.3%.

"Disciplinary decisions against one-in-twelve inmates (8.3%) who share a cell in which contraband was found, based solely on that fact, cannot survive evidentiary review."   Cardenas v. Wigen, 921 F. Supp. 286 (1996).   Thus, this contraband (found in a space shared by 12, accessible by 300+ inmates), cannot be tied to the Petitioner per Cardenas.

The central issue, that has plagued the Petitioner's case, concerns the alleged possession of contraband.

A. THE REPORTING OFFICER'S STATEMENT

The Incident Report (BP-A0288), which was filed on 3-13-2020 at 11:10am, was written by Reporting Officer M. Krzewska.   Part I, Section 11 -- which describes the incident -- states:

> On March 13, 2020, I, Officer M. Krzewska, was
> assigned    to    Housing    Unit    5841.        At
> approximately  9:30am  I  conducted  a  random
> search of room 217.  Upon entering the cell I
> announced my presence and informed all inmates
> that the area is, at this time, a subject to
> search.    I  pat-searched  all  present  inmates
> with negative results, and cleared the room.
> While searching area of locker 4-lower, which
> was   later   identified   as   inmate   Salvador,
> Patrick, Reg. No. 11264-031 assigned locked, I
> discovered  1  Gray/Silver  in  color  Samsung
> Smartphone with 1 Sim card.  The phone was
> hidden  in  a  wall  safe  made  in  a  seam

connecting bricks next to locker 4 lower. The hallowed [sic] out seam was masked with ULINE tape color off-white. Upon search of locker 4-lower I discovered a roll of this same tape inside of the locker. Under locker 4-lower I discovered a magnetized, homemade, cell phone pouch that perfectly fit the cellphone found in the wall safe. I identified the locker's owner by prescription medication I found in the locker. The locker was also verified as being assigned to inmate Salvador by utilizing Sentry and the unit bed book roster.

As per page 40 of the inmate's A&O handbook it states it is the inmate's responsibility to keep their area free of all contraband.

In review of the Reporting Officer's statement, the Petitioner has found various inconsistencies:

1. THE REPORTING OFFICER FAILS TO SPECIFY WHAT CONSTITUTES THE "AREA OF LOCKER 4-LOWER."

Per Cardenas, Id., "mere proximity" is insufficient to establish constrictive possession, and moreover, "constructive possession may be inferred when the contraband is found in a place which is immediately and exclusively accessible to the accused." (See Carrasco, Id.)

Because there is no clear indication by the Reporting Officer as to the "area" of locker 4-lower, or how this area compares to the greater context of the 12-bed dorm room, it is impossible to determine if the contraband was "in a place immediately accessible to the accused."

Following the incident the Petitioner searched the wall to determine the exact location of the seam between bricks. The

distance between the extreme end of bunk 4-lower and the break in the wall was over 6-feet, and therefore fully closer to bunks 3-upper and 3-lower.  As such -- and because the area of the break in the wall was accessible to anybody in the housing unit -- the Petitioner did not have "exclusive" access to the area.

## 2. THERE IS NO DESCRIPTION OR EVIDENCE PROVIDED DEPICTING THE "WALL SAFE" IN WHICH THE PHONE WAS DISCOVERED

The Reporting Officer references a "wall safe" hidden in the seam between bricks but provides no description nor any photographic evidence of the alleged "wall safe." This wall safe is referenced twice in the report (see lines 8 and 10), but it is not described or shown in any photographs.

## 3. THE REPORTING OFFICER'S CLAIM THAT A "POUCH" WAS FOUND <u>UNDER</u> THE 4-LOWER LOCKER IS PLAINLY FALSE

The 4-lower locker, which is six feet high (by 2 feet by 1.5 feet) sits flush against the floor. To move the locker, which was full of the Petitioner's possessions, requires the strength of two individuals. This is notwithstanding the impossibility of any item being concealed <u>under</u> the locker as the metal base sits flat against the floor.

There was no photographic evidence of the "pouch" in the Incident Report, however, missing from the Petitioner's locker was his BOP-issued glasses case (as the Petitioner was out of the building at the time of the shakedown, and wearing his glasses,

the glasses case was empty).   This glasses case was not magnetized, nor could it fit under the locker.  A fellow inmate's glasses case (of the same style, issued by the BOP) was <u>larger</u> than the space in the wall where the alleged wall safe and contraband cell phone were found.

## 4. THE U-LINE TAPE, REFERENCED BY THE REPORTING OFFICER, IS DIFFERENT IN SIZE TO THE TAPE FOUND IN THE PETITIONER'S LOCKER

The Petitioner states in his Regional Appeal (see: BP-10, Case No. 1031417121):

> The hole is covered by a strip of 1"-wide tape which is painted to match the wall ... [the Reporting Officer] tries to tie me to the phone with tape that was found in my locker ... However, this is <u>not</u> the same tape that was used [on the wall].

The photo evidence submitted by the Reporting Officer fails to utilize the evidence ruler to indicate the dimensions of the tape recovered from the Petitioner's locker.

Despite being instructed to leave the wall undisturbed by UDC Bullock "so that the DHO could look at it," the area was never examined by the DHO.  Because there were no photographs to show:

> (i)   the proximity of the break between bricks in the wall to bunk/locker 4-lower;
>
> (ii)  the alleged "wall safe" in which the cell phone was discovered;
>
> (iii) the accurate dimensions of the tape recovered from the Petitioner's locker; and

      (iv)  any evidence of the alleged magnetized
            pouch that was purportedly found <u>under</u>
            the locker

The record does not properly corroborate the claims of the Reporting Officer. To the contrary, there were opportunities lost by the DHO to investigate these inconsistencies despite the Petitioner's attempt to submit evidence that refuted the Reporting Officer's claims.

## B. THE PETITIONER'S INABILITY TO AFFORD A CONTRABAND CELL PHONE

The cost of contraband cell phones in prisons is prohibitive (see: <u>United States v. Ballenteros</u>, US Dist. LEXIS 13404 (2015), in which an inmate "paid $2,100 for a contraband cell phone"; also finding that the cost is "often covered by gang members"; see also: <u>Goodman v. United States</u>, US Dist. LEXIS 130814 (2015), in which members of the "Bloods" street gang transacted $2,500.00 for contraband cell phones in prison.

The Petitioner is a non-US citizen of Germany who receives financial assistance from the German consulate. These meager monthly payments are barely sufficient to buy items at the prison commissary. The Petitioner has no network of support outside of prison, and certainly no gang affiliation or street organization that could foot the bill for a contraband cell phone. See also: <u>United States v. Millan-Machuca</u>, 991 F. 3d. 7 (2021), in which

cell phones for prisoners were brokered by outside groups: "The monetary transactions were handled by individuals outside of the prison who sent funds by Western Union or Money Gram transfer to bank accounts controlled by gang leaders.  For transactions in excess of $10,000, outside contacts met in person and exchanged cash."

The Petitioner has none of these resources, nor does he have "contacts" on the street that could find nor arrange a contraband cell phone.  Nothing in evidence, nor in the Petitioner's past prior good conduct, is suggestive that the cell phone is his.

## II. THE DHO HEARING AND REPORT

According to the Petitioner:

> The DHO Hearing was held in 5802 Unit Team
> Offices by DHO Reynolds.  When I entered, she
> told me to have a seat.  She read the Incident
> Report, then stated, "OK, this looks pretty
> cut and dried.  Here's what I'm going to do.
> I'm going to impose ..."  Then I interrupted,
> saying that there's actually a different side
> to this story.  I explained my side: I was out
> of the building at the time; had no idea about
> the wall stash until after reviewing the
> Incident Report; and the non-matching tape.
> She told me that my points didn't matter,
> because in the end, the phone was found and
> technically they could write the Incident
> Report for everybody in the room.  She did not
> explain why, if the Incident Report could have
> been written for all occupants of the room,
> why I had been singled out.  I asked her if
> she thought I was lying to her, and she said
> that in her experience, inmates will usually
> lie to get out of trouble, and that she has to
> go with what "her officer" is claiming.  She
> said I could always appeal the decision.
>
> Her general attitude was basically to just
> push the Incident Report through and let any
> arguments be settled at the appeal level.

This arbitrary form of decision-making by a DHO -- to presume guilt and pre-determine the outcome of a hearing without hearing the inmate's explanation is a denial of Due Process.  This presumption of guilt has been ruled upon in a prior Third Circuit Court.

In Thomas v. Ortiz, U.S. Dist. LEXIS 33505 (2019), the case arose from a disciplinary hearing during a Petitioner's incarceration at FCI Schuylkill.  The prison issued an Incident

Report charging the Petitioner with possession of a hazardous tool, in violation of Prisons Code 108.  Prison officials referred the Incident Report to the Unit Disciplinary Committee ("UDC") for an initial hearing, and the UDC referred the matter to Discipline Hearing Officer ("DHO") Kevin Bittenbender.

DHO Bittenbender asked Petitioner to sign for a monetary sanction, before starting the hearing.  According to the Petitioner, before DHO Bittenbender sat down, the officer "slid a document across the table."  In response to the Petitioner's request to identify the document, DHO Bittenbender allegedly said, "[i]t's for a monetary fine forfeiture and authorization to have $295.00 withdrawn from your account.  It's part of the sanctions I'm giving you."  The Petitioner then stated, "I'm not going to sign that because we haven't even started the hearing yet."

Ultimately, DHO Bittenbender concluded that the greater weight of the evidence supported a finding that the Petitioner committed the act of possessing or introducing a hazardous tool, in violation of Code 108.  Petitioner then received the sanctions of "90 days of disciplinary segregation; disallowance of 41 days of good conduct time; forfeiture of 471 days of good conduct time; and a 2-year loss of telephone, e-mail, and visiting privileges."

Petitioner appealed DHO Bittenbender's decision arguing that DHO Bittenbender was biased and that the sanctions were too

severe.    At each level of appeal, the Regional Director and
Administrator respectively found that DHO Bittenbender based his
decision on the weight of the evidence and that the sanctions were
not disproportionate to Petitioner's misconduct.    Neither
decision, however, directly addressed the allegation that DHO
Bittenbender had prejudiced the Petitioner prior to the hearing,
stating only that the proceedings "complied with Petitioner's Due
Process rights.    The Petitioner argued that the Disciplinary
Hearing Officer who presided over his case was biased against the
Petitioner, which deprived him of Due Process.    DHO Bittenbender
stated that he "[d]oes not specifically recall the Petitioner or
his hearing."

        The Court found:

> "Even if there were a direct conflict, the
> Court must accept the truth of Petitioner's
> factual allegations at this stage, as the
> record fails to show that the allegations are
> "clearly frivolous."   The Court must assume
> that DHO Bittenbender provided Petitioner
> with the sanction form and stated, "It's part
> of the sanctions I'm giving you," before
> starting the hearing leading to the
> conclusion that DHO Bittenbender had
> predetermined Petitioner's guilt, and that
> Petitioner did not "appear[] before an
> impartial decision making body."

    In the instant case, DHO Reynolds's Report shows the DHO's
lack of attention to detail.    The report was delivered beyond the
recommended 15-day period, and when it was delivered to the
Petitioner, the DHO had amended the details of the initial

Incident Report stating, "[a] hazardous tool found in your assigned locker by the reporting officer." But the reporting officer found the cell phone in a common area, <u>inside the wall</u>, not in the Petitioner's locker (see Section V., ¶4). This was later characterized as a typographical error. But this was a total embellishment of the initial Incident Report.

In the DHO Report, DHO Reynolds later accused the Petitioner of "providing the DHO with inaccurate information in order to not accept full responsibility for [his] actions" (see Section V., ¶7). But it is the DHO providing plainly false information in the report.

III. THE PETITIONER'S ADMINISTRATIVE REMEDY ATTEMPTS WERE THWARTED
     BY THE BOP'S FAILURE TO FOLLOW ADMINISTRATIVE PROTOCOLS

In total, the Petitioner's Administrative Remedy proceedings extended over a 12-month period, and the convoluted process blocked his ability to seek any meaningful answers to his remedy requests.

Strict guidelines for Administrative Remedy Requests and subsequent responses from the Bureau of Prisons are set forth in both BOP policy and various subsections of the Code of Federal Regulations (see generally: PS 5270.09, Inmate Discipline Program).

On March 13, 2020, the Petitioner received a copy of the Incident Report, which was served by Lieutenant Savage. After a passage of 3 days, the Petitioner attended a Unit Disciplinary Committee Hearing with Unit Manager Bullock, and approximately one month thereafter he attended the DHO Hearing with Lieutenant Reynolds. (issues related to violations of the Petitioner's Due Process rights are set forth in detail in Section II of this petition.)

In strict compliance with the Inmate Discipline Program Statement (PS 5270.09, the Petitioner initiated his appeals process.

On May 28, 2020, the Petitioner filed a Regional Administrative Appeal via Fort Dix Institutional "Legal Mail."

A passage of 31 days occurred, and no response was received by the Regional Office. Per BOP Policy (PS 5270.09), a non-response to a Regional Administrative Appeal should be considered equal to a denial, and policy directs BOP prisoners to advance to the next level of appeal.

On July 15, 2020, the Petitioner filed a Central Office Administrative Remedy Appeal via Fort Dix Institutional "Legal Mail."

On August 18, 2020, following a passage of 34 days, the Central Office Administrative Remedy Appeal was returned to the Petitioner. The reason for this appeal being rejected was cited by the BOP: The Petitioner had failed to attach a copy of his Regional Administrative Remedy Appeal and denial. But this is because the Regional Office had failed to meet its deadline to respond -- there was no denial.

This delay in appeal constitutes a strict denial of the Petitioner's Due Process rights. Despite his clear compliance with the BOP's policy as it related to timeliness of appeals, he was prejudiced by the Central Office which rejected his Central Office Administrative Remedy Appeal without cause. Pursuant to

BOP policy, the only course of action available to the BOP was to respond to the instant appeal. This did not occur. Instead the appeal was rejected, causing delay and confusion.

On September 2, 2020, the Petitioner re-filed the Central Office Administrative Remedy Appeal and attached the BOP's receipt of the Regional Administrative Remedy Appeal. Because no response had been received by the Petitioner, he outlined again that he was advancing to the Central Office level of appeal.

This was met by further obstruction. On October 30, 2020, the BOP returned the Central Office Administrative citing "untimely receipt" as its reason.

At this point almost eight months had elapsed during which the Petitioner's sanctions had been applied. He had been given no response at all to his appeal which had been filed in May.

BOP Counselor B. Solheim wrote a memorandum to the Central Office to confirm that the Petitioner had submitted timely appeals. To the extent that they were able, the FCI Fort Dix staff assisted the Petitioner, recognizing that the Regional and Central Offices had failed to respond to his timely appeals, in violation of BOP policy.

On November 16, 2020, the Petitioner resent the Central Office Administrative Remedy Appeal -- attaching the memo from Counselor B. Solheim -- via FCI Fort Dix Institutional "Legal Mail."

On December 14, 2020, the BOP Central Office acknowledged the receipt of the Petitioner's appeal, but immediately demanded further delay in the proceedings by requesting an extension of time to respond, taking the Petitioner's expected response to January 30, 2021.

This deadline was not met by the BOP.  No response was received by the Petitioner on or before January 30, 2021.

On February 10, 2021, the Petitioner was hand-delivered an "amended" DHO Report which created further confusion.

The original DHO Report by DHO Reynolds misstated that a phone had been found in the Petitioner's assigned locker, which was entirely at odds with the Incident Report, authored by Reporting Officer M. Krzewska.  The DHO Report was amended but the offending non-factual statements still remained.  Paragraph 5, Section V of the DHO Report was augmented with further quotes from the Reporting Officer, but the amendments to the report went no length in changing the content or making more accurate the allegations against the Petitioner.  In fact, the amended DHO

Report was <u>more</u> implicating, and further demonstrated the BOP's willingness to misstate the facts and allow false statements to remain on the record -- and some 11 months after the alleged incident.

To add insult to injury, a month later, the Petitioner received a denial of his appeal from the Central Office. The denial was dated February 10, 2021 -- the same day Petitioner received the falsely amended DHO Report. It is clear to the Petitioner that Central Office ordered the amendment of the DHO Report, which was then carelessly amended without the necessary examination of the facts, affording the Petitioner nothing.

In a total betrayal of policy, the Petitioner inexplicably received on March 26, 2021, a response to his <u>Regional Office</u> Administrative Remedy Appeal (dated January 19, 2021), a full 8 months past its due date.

## CONCLUSION

The conflation of repeated, critical errors in the Petitioner's disciplinary proceedings have denied him his basic right to Due Process and a meaningful administrative appeal. This is notwithstanding the fact that the Petitioner can show through clear and obvious factual observations that the contraband was tied to him in error to begin with, and he was denied a true impartial hearing or the merits of the accusations made against him.

Every stage of the proceedings has been marred by a continued pattern of mistakes and circumstantial claims.  The evidentiary basis for the original incident fails on several fronts, specifically the Reporting Officer's failure to provide exact details that would implicate the Petitioner.  Contraband found in open areas, accessible to the entire inmate population, cannot be tied to one individual.  In order to implicate the Petitioner, the officer alleges a "pouch" that was found in his living quarters, but fails to enter this into evidence.  The alleged location of the pouch is not only implausible but logistically impossible due to the position and design of the Petitioner's bunk and locker.

Evidence that was preserved by the Petitioner to demonstrate his innocence in the matter was never referenced by the DHO, or at any point during appeal.  No further inspection of the area took place, and no efforts were made to locate the alleged "wall safe" which was never located, described, or photographed; the "pouch" which was never entered into evidence; or the tape which the Petitioner was able to use as part of his defense.

All points indicate that zero challenges to the incident were taken into account at any stage.

This was exacerbated by the DHO's failure to properly conduct a fair and impartial hearing, and worsened still by the year-long delay, deflection, and obstruction methods of the BOP throughout the Petitioner's appeal.

As such, the Petitioner requests -- given the liberty interests at stake in this BOP disciplinary action -- that his sanctions be overturned by this Honorable Court.

Respectfully submitted this _27th_ day of _January, 2022, 2021._

_____
Petitioner

BP-A0288
JAN 17

**INCIDENT REPORT**

**U.S. DEPARTMENT OF JUSTICE**                                **FEDERAL BUREAU OF PRISONS**

---

### Part I – Incident Report

| | |
|---|---|
| 1. Institution:  FCI FORT DIX | Incident Report Number: |

| 2. Inmate's Name: SALVADOR, PATRICK | 3. Register Number: 11264-031 | 4. Date of Incident: 03-13-2020 | 5. Time: 9:30 AM |
|---|---|---|---|

| 6. Place of Incident: 5841, Room 217 | 7. Assignment: FPI | 8. Unit: 5841 |
|---|---|---|

| 9. Incident: Possession of a hazardous tool. | 10. Prohibited Act Code(s) 108 |
|---|---|

11. 11. Description of Incident (Date: <u>03-13-2020</u> Time: <u>9:30 A.M.</u>  Staff became aware of incident):

On March 13, 2020, I, Officer M.Krzewska, was assigned to Housing Unit 5841. At approximately 9:30 AM I conducted a random search of room 217. Upon entering the cell I announced my presence and informed all inmates that the area is, at this time, a subject to search. I pat-searched all present inmates with negative results, and cleared the room. While searching area of locker 4 Lower, which was later identified as inmate Salvador, Patrick Reg. no. 11264-031 assigned locker, I discovered 1 Gray/Silver in color Samsung Smartphone with 1 SIM card. The phone was hidden in a wall safe made in a seam connecting bricks next to locker 4 Lower. The hallowed out seam was masked with ULINE Tape color off-white. Upon search of locker 4 Lower I discovered a roll of this same tape inside of the locker. Under locker 4 Lower I discovered a magnetized, homemade, cellphone pouch that perfectly fit the cellphone found in the wall safe. I identified the locker's owner by prescription medication I found in the locker. The locker was also verified as being assigned to inmate Salvador by utilizing Sentry and the unit bed book roster.
As per page 40 of the inmate's A&O handbook it states it is the inmate's responsibility to keep their area free of all contraband.

| 12. Typed Name/Signature of Reporting Employee: Correctional Officer M. Krzewska | 13.Date And Time: 03-13-2020 11:10 A.M. |
|---|---|

| 14. Incident Report Delivered to the Above Inmate By _(signature)_ | 15. Date Incident Report Delivered: 3/13/20 | 16. Time Incident Report Delivered: 12:25 P.m. |
|---|---|---|

### Part II – Committee Action

17. Comments of Inmate to Committee Regarding Above Incident:

| 18. A. It is the finding of the committee that you: ____ Committed the Prohibited Act as charged. ____ Did not Commit a Prohibited Act. ____ Committed Prohibited Act Code(s). _____ | B. ____ The Committee is referring the Charge(s) to the DHO for further Hearing. C. ____ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days. |
|---|---|

19. Committee Decision is Based on Specific Evidence as Follows:

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):

21. Date and Time of Action: _____ (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

Chairman(Typed Name/Signature)          Member (Typed Name)          Member (Typed Name)

INSTRUCTIONS: All items outside of heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.

Distribute: Original-Central File Record; COPY 1-DHO; COPY 2-Inmate after UDC Action; COPY 3-Inmate within 24 hours of Part I Preparation    WD
Prescribed by P5270          Replaces BP-A0288 of AUG 11